OPINION OF THE COURT
Edward J. McLaughlin, J.
Defendant has moved to suppress narcotics* found in his *219 codefendant girlfriend’s hotel room while he was present there with her on November 24,1987. The People seek to justify the warrantless search based on his codefendant’s consent and upon exigent circumstances. For the following reasons, the court declines to reach the merits of either of those issues and holds, instead, that defendant lacks the requisite standing to move to suppress.
A Mapp hearing was held on July 26 and 28, 1988. Three witnesses, State Police Investigators Santos Castro, Juan In-clan, and James McDowell, testified for the People. Defendant Rada testified for the defense. Ruth Bohrer, Rada’s codefendant, was also called for the defense, but she asserted her privilege against self-incrimination and accordingly refused to testify. Bohrer had entered a plea of guilty to criminal possession of a controlled substance in the second degree (Penal Law § 220.18) and is awaiting sentence. For the purpose of the hearing, the court credits the testimony of all the witnesses.
THE FACTS
The facts on which the court relies are as follows.
On November 24, 1987, following a sale of narcotics occurring on November 9, 1987, in the Henry Hudson Motel, 353 West 57th Street, room 1417, in Manhattan as well as additional negotiations taking place on November 23, Investigator Castro, in an undercover capacity, went to room 1417 of the motel to purchase another five kilograms of cocaine from Marlene Sierra.
Sierra told him that while two of the kilograms were in room 1417, the remainder was elsewhere. The police, having decided to wait no longer, arrested Sierra, seized the two kilograms, and pressed her as to where exactly the other three kilograms were. Sierra eventually told the police that the balance of the shipment was in the laundry hamper of room 1401.
When the police entered room 1401, they found Ruth Bohrer, to whom the motel room was registered, and defendant Rada. A security sweep was done, some traces of cocaine were found on a dresser, and Rada was patted down. Bohrer signed a form consenting to a search of the room, and a *220 thorough search uncovered two kilograms of cocaine in th. hamper, another kilogram in a gym bag, a strainer and a black plastic vial containing cocaine on the dresser.
Rada testified that Bohrer was a girlfriend and that he had slept with her in her motel room about 10 times over an undisclosed but seemingly extensive period of time, that he never left his belongings there, and that he never paid any rent. Rada also testified that it was not his gym bag and that he did not bring it into the room with him. In the People’s response to defendant’s omnibus motion, however, the People stated that the gym bag belonged to Rada.
THE LAW
The present state of the law of standing appears to be in flux and is the subject of much debate. With regard to one of the standing issues presented herein, for example, other courts that have recently considered the matter have adopted a view that differs from this court’s position.
Defendant could have obtained standing to contest at least part of the seizure of the narcotics on the proper assertion of any 1 of the following 4 grounds. None of the grounds offers defendant standing, however, and defendant’s motion to suppress must therefore be denied.
First, a statement by an Assistant District Attorney that a defendant was observed to have physically possessed an item is a sufficient basis on which a defendant may claim standing to suppress it (People v Sutton, 91 AD2d 522; People v Taylor, 97 AD2d 381). The conclusory remark in the People’s response to defendant’s omnibus motion that the gym bag was Rada’s is not, however, the kind of allegation contemplated by Sutton that would obviate the requirement that a defendant himself admit to possessing contraband or to having a possessory interest in the bag (see, People v Gomez, 67 NY2d 843, 844 [which holds that an allegation by the People in a felony complaint that evidence is found " 'in defendant’s apartment’ ” does not relieve a defendant from alleging a further possessory interest]). At no time in the People’s response or during the hearing did any law enforcement official attribute to Rada the direct, physical possession of the bag. Even defendant, who testified at the hearing, denied ever possessing the bag (cf., People v Barshai, 100 AD2d 253, 256-257).
Second, a defendant may obtain automatic standing if an *221 allegation of possession is founded entirely on a statutory presumption (People v Millan, 69 NY2d 514), such as the room presumption (Penal Law § 220.25). That presumption plays no role, however, let alone the sole role, in the People’s case against Rada.
Third, a defendant is entitled to challenge the basis of the arrest of another person when that arrest leads directly to the obtaining of tangible or intangible evidence (i.e., a seizure of physical evidence, the taking of statements, an appearance in an identification procedure, etc.) from the defendant (People v Mosley, 68 NY2d 881, 883, rearg denied 69 NY2d 707, cert denied 482 US 914 [1987]).
This court specifically disagrees with any interpretation of Mosley (supra) that would give joint standing to a defendant who is charged with constructively possessing contraband with a codefendant who has standing (see, People v Wesley, 139 AD2d 946 [4th Dept 1988]; People v Williams, 140 Misc 2d 741 [Sup Ct, Kings County]; People v Pagan, 138 Misc 2d 802; People v Ycasa, 140 Misc 2d 114 [Crim Ct, NY County]). Moreover, the court is not inclined to grant automatic standing even when the accusation of constructive possession is founded upon the actual physical possession of contraband by a codefendant (see, People v Febus, NYLJ, Aug. 29, 1988, at 18, col 6, at 19, col 2 [Sup Ct, NY County]), a fact that existed neither in Febus nor in the case at bar.
The court believes that Mosley (supra) stands only for the basic proposition, enunciated authoritatively in Dunaway v New York (442 US 200) and Wong Sun v United States (371 US 471), that an individual may contest the foundations or building blocks that led to the poisoned fruit that the People intend to proffer as evidence at trial, such as contraband, statements, or identification testimony. Mosley himself, after all, apparently was never prosecuted for anything related to the possession of Mackie’s starter pistol. Mosley never sought to suppress the starter pistol. Mosley moved to suppress the .22 caliber pistol found on his person. To do so, Mosley challenged the pretext for his arrest, which was the unprosecuted constructive possession of Mackie’s starter pistol. According to my analysis, had Mosley been prosecuted for possessing the starter’s pistol, he would not have had standing.
The cases cited above — Wesley, Williams, Pagan, Ycasa and Febus (supra) — would hold that Mosley had standing to suppress Mackie’s starter pistol if he had been prosecuted, and not just *222 arrested, for constructively possessing it. The court cannot agree with that conclusion, and accordingly denies Rada any standing on the theory that his prosecution, with Bohrer, who has standing, is based on constructive possession.
Although it is true that the primary focus of suppression courts must be on the constitutionality of law enforcement action and that arguably unfair results occur when, for example, lawful residents of apartments where contraband is discovered have their cases dismissed because of an illegal search but when the resident’s invited guests get convicted, affording those guests vicarious standing on prosecutions premised on constructive possession heralds a return to the wholesale adoption of automatic standing.
The law, on the other hand, is that "[a] person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person’s premises or property has not had any of his Fourth Amendment rights infringed” (Rakas v Illinois, 439 US 128, 134, citing Alderman v United States, 394 US 165, 174). The United States Supreme Court (United States v Salvucci, 448 US 83) has abrogated the doctrine of automatic standing (see, Jones v United States, 362 US 257) and the New York Court of Appeals (People v Ponder, 54 NY2d 160) has agreed; The "fairness” issue must be resolved in favor of the proposition that standing cannot come merely from a common-law (as opposed to statutorily presumptive) theory of constructive possession. It is one thing to grant a form of automatic standing when knowledge and guilt flow from a statutory presumption (see, People v Millan, supra, at 520). It is quite another thing simply not to allow a defendant to rely on constructive possession, but instead to compel him, if he is able, to acknowledge a possessory interest when challenging the legality of searches and seizures.
Fourth, a defendant has standing if he can demonstrate a reasonable expectation of privacy in the area or thing that was searched (Rakas v Illinois, supra, at 149; People v Ponder, supra, at 166).
The evidence here was found not on defendant’s person, of course, but in a motel room in which he was an invited guest. Defendant was not an occupant of the motel room (see, Stoner v California, 376 US 483, reh denied 377 US 940; United States v Jeffers, 342 US 48; People v Ali, 131 AD2d 857, affd 71 NY2d 1010, 1011). To the contrary, Rada, a 10-time over *223 night visitor, has failed to show a constitutionally recognizable expectation of privacy in room 1401 (see, People v Rodriguez, 69 NY2d 159; People v Febus, supra, at 19, col 2).
There was no testimony that Rada took any precautions to maintain privacy in the room, that he had any right to exclude others, or that he had "indicia of connectedness and privacy, like change of clothes or sharing expenses or household burdens” (People v Rodriguez, supra, at 163). Rada was just "a transient” who had no attachment "to the apartment where he was arrested or any relevant thing in that apartment” (supra, at 164). Rada, like the defendant in People v Ponder (supra), occasionally spent the night in the dwelling that was searched, and the Court of Appeals held that nexus insufficient. Ponder also had the same link with the washing machine in his grandmother’s house in which the weapon was found that Rada had with Bohrer’s laundry hamper — no link at all.
To conclude, under no theory does defendant have standing to object to the search of his codefendant’s motel room. Thus, defendant’s motion is denied in its entirety.

 Rada has also moved to suppress statements (People v Huntley, 15 NY2d 72) that he made following his arrest, contending that he never received his *219 Miranda warnings (Miranda v Arizona, 384 US 436). However, the court finds that he was given all of his requisite warnings and that the statements were voluntary beyond a reasonable doubt. The People are free, therefore, to use defendant’s statements at trial.